669 A.2d 389

COMMONWEALTH of Pennsylvania, Appellant,

v.

Betty LEGG.

Superior Court of Pennsylvania.

Argued Oct. 12, 1995.

Filed Dec. 29, 1995.

Reargument Denied March 5, 1996.

Scott A. Bradley, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Caroline Roberto, Pittsburgh, for appellee.

Before ROWLEY, President Judge, and TAMILIA and HESTER, JJ.

TAMILIA, Judge.

The Commonwealth takes this appeal from the March 31, 1994 Order granting appellee's collateral petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541 *et seq.* Following a nonjury trial, appellee was found guilty of the first degree murder [1] of her former husband and sentenced to life imprisonment.[2]

At trial, it was established appellee drove to decedent's place of employment, encountered him as he entered his car and joined him in the front seat of the car for a discussion of a situation involving the decedent and another woman. During the course of their conversation, appellee removed a handgun from her purse and shot the decedent once in the arm and once in the back. The record also reveals that immediately following the shooting Legg went to the police station and stated to the desk Sergeant, while handing him the gun, "I just shot my husband." (N.T., 3/24/87, pp. 88–90.) She continued to claim the shooting was an accident five years after the incident when interviewed by Dr. Levit, appellee's independent psychologist.

Following conviction and the denial of appellee's post-trial motions, she filed a direct appeal to this Court in which we affirmed the judgment of sentence. *Commonwealth v. Legg,* 387 Pa.Super. 649, 559 A.2d 963 (1989) (unpublished memorandum). Appellee's petition for allowance of appeal was thereafter denied by the Pennsylvania Supreme Court by Per Curiam Order dated June 30, 1989.

On February 27, 1991, appellee filed a PCRA petition requesting a new trial, which alleged ineffectiveness of counsel for failure to raise the issue of state of mind relating to a "battered wife syndrome." It was supplemented by a second petition on October 2, 1991, alleging ineffectiveness for failure to raise the diminished capacity defense. Thereafter, a hearing was convened on December 17, 1992, at which time Legg

---

1. 18 Pa.C.S. § 2501.

2. Appellee also was convicted of violating the Uniform Firearms Act, 18 Pa.C.S. § 6106, for which no further penalty was imposed.

abandoned the battered wife defense. At the hearing, appellee, her trial counsel and an expert psychologist testified as to diminished capacity, following which the PCRA court entered the Order granting appellee a new trial, finding:

> [D]efendant's trial counsel was ineffective by reason of failing to present available psychological and/or psychiatric evidence concerning defendant's state of mind at the time of the shooting for which defendant was convicted of first degree murder after a non-jury trial. The Court further finds that defendant's claim is of arguable merit, that trial counsel did not have a reasonable basis for not pursuing said evidence, and that defendant was prejudiced by trial counsel's failure to present expert testimony at trial concerning defendant's ability to formulate the specific intent to kill such as would tend to reduce the degree of homicide from first degree to third degree murder, deprived the trier of fact of mitigating evidence regarding defendant's state of mind at the time of the shooting. The Court concludes that trial counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilty or innocence of the crime of first degree murder could have taken place under the circumstances.

(Order of Court, Penkower, J., 3/31/94.)

The Commonwealth now appeals to this Court claiming the PCRA court's limited analysis fails to account for the reasonable basis proffered by counsel for foregoing this type of defense, and because the record fails to support the court's decision, that decision must be reversed. We agree.

Our scope of review, when examining a post-conviction court's grant or denial of relief is limited to determining whether the court's findings were supported by the record and the court's order is otherwise free of legal error. The findings of the post-conviction court will not be disturbed unless they have no support in the record.

To be eligible for relief under the Post Conviction Relief Act, an appellant must plead and disprove by a preponderance of evidence that his conviction resulted from ineffective assistance of counsel which, in the circumstances of the

particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

In establishing a claim of ineffectiveness an appellant must initially demonstrate that the issue underlying the claim of ineffectiveness has arguable merit. Next, if appellant's claim does have arguable merit, we must determine whether counsel's failure to pursue the matter had some reasonable basis designed to serve the interests of his client. Finally, if the record reveals that counsel was ineffective, it must be determined whether appellant has demonstrated that counsel's ineffectiveness so prejudiced the appellant's case that it is likely that the result would have been different absent the errors.

*Commonwealth v. Granberry,* 434 Pa.Super. 524, 529, 644 A.2d 204, 207 (1994) (citations omitted).

Initially, the Commonwealth concedes appellee's claim is of arguable merit since, had counsel been aware of the information, it may have been used in support of a defense of diminished capacity. However, the Commonwealth attacks the second prong of the ineffective test by contending trial counsel acted reasonably in foregoing use of psychiatric/psychological evidence to support a diminished capacity defense and in presenting the defense of accident or homicide by misadventure. Specifically, the Commonwealth contends the accident defense was the better course because of its potential for full acquittal, while a diminished capacity defense still would have resulted in a conviction of third degree murder. Additionally, the Commonwealth argues Legg continually stated the shooting was an accident, that she never admitted to shooting her husband, and thus, to present a diminished capacity defense would be contradictory to her own statements.

On June 11, 1986, less than two months before the shooting, appellee was admitted to the psychiatric ward of St. John's Hospital in Pittsburgh. She was a direct emergency referral from Northern Communities Mental Health/Mental Retardation Center in Pittsburgh and was diagnosed as suffering from

major depression with anxiety (PCRA Hearing Transcript (H.T.), 12/17/92, p. 15). On June 16, 1986, appellee saw Dr. Dabney–Smith, Ph.D., for only one session, which she discontinued against medical advice as she continued to be extremely agitated and discontinued all medication (H.T. at 23–24). On August 11, 1986, following the shooting, records show an Allegheny County team psychiatrist saw appellee at which time she indicated she was in a psychiatric hospital two months earlier for fear she would hurt her husband (H.T. at 33). The records of a team psychologist at the jail also reflect she informed him regarding this hospitalization (H.T. at 34). Finally, on October 27, 1986, appellee was interviewed by an investigator with the County Public Defender's Office, whose records also reflect she informed him regarding her hospitalization (H.T. at 102). Despite trial counsel's poor recollection of any of this information, the court did address the issue of competence and psychiatric evaluations in its colloquy on waiver of jury trial.

Trial counsel was being disingenuous by stating he had no knowledge of the comprehensive reports and the trial judge, having reviewed the Behavior Clinic reports, was fully aware of their implications. It appears both the trial court and trial counsel accepted the finding of competence and the weakness of a diminished capacity defense at the time of trial.

I would argue, Your Honor, certainly the first shot is an accidental shooting when he reaches for the gun. I can't argue, Your Honor, accidental shooting or homicide by misadventure, because I understand the law is when you are involved in an unlawful act, i.e. possession of a firearm in close proximity of someone, with the purse, et cetera, and she has testified it was her intention to pull it out to scare him, that that unlawful act would bar Your Honor from rendering a verdict of not guilty of criminal homicide by virtue of that defense.

That does not preclude Your Honor from finding that verdict out of your mercy dispensing powers, so I'm not arguing that on the basis of the facts alone. At most, you have what I suggest is an unintentional killing based upon

exactly the facts you heard here, and that woman's testimony, Judge.

Based on her character, your mercy dispensing powers, and as I said, particularly the facts of the case and how the gun discharged two times.

(T.T., 3/24/87, pp. 216–217.) This statement establishes that trial counsel never abandoned the accidental, unintentional defense theory.

The trial testimony of March 24, 1987, as summarized, provides the following evidence. As a result of harassing calls and a telephone trace, Amy Stephenson filed harassment charges against Betty Legg for calls made around May, 1980 (T.T. at 110–111). Other harassment occurred consisting of appellee following decedent and Amy in her car and car-tailing them (T.T. at 112–113) until a week before decedent's death. At trial, appellee called seven co-workers who testified to her stability, reliability and reputation for law-abidance. There was never a hint of mental disability, cognitive disorder or violent personality.

Appellee testified she was in decedent's car discussing his relationship with Amy Stephenson and the fact she was summoned to a hearing on the harassment charge by Amy. It was after the conversation became somewhat heated that she pulled the gun. Before she could aim it, decedent grabbed the gun and it went off. As he turned away, she stated she heard the gun going off again as she was trying to remove her finger from the trigger. She does not recall pulling the trigger the second time, although she heard the second shot. She then left his car and drove to the Public Safety Building where she reported the shooting to police. She testified she never had used the gun, although it was kept under the front seat of her car for several years. She took the gun and went to decedent's car when she saw him and *thought she would frighten him into telling the truth about this relationship with Amy* (T.T. at 167–196).

The evidence produced at trial, ending in appellee's testimony she only wanted to frighten decedent and that the gun

went off when he grabbed it before she aimed it, and it went off a second time as she extracted her finger from the trigger, conclusively established that she was claiming an accidental shooting with no specific intent to kill. The belated defense of diminished capacity now raised under the PCRA requires that appellee intended to kill but because of a cognitive mental disorder which deprived her of the ability to form the specific intent, she could not be convicted of first degree murder. Reliance on a prior mental history at this time, when a highly skilled and respected trial attorney, Kim Riester, intended to pursue acquittal on the defense of accident or homicide by misadventure (H.T. at 68), is not sustainable. In this respect, the second prong of the test that "counsel's failure to pursue the matter had some reasonable basis designed to serve the interests of his client" is clearly indicated here. The fact that appellee was hospitalized briefly in June, 1986, two months before the shooting, for an anxiety state does not establish counsel was ineffective for not pursuing a diminished capacity defense in 1987. Counsel testified Legg maintained the shooting was an accident (H.T. at 68) throughout preparation of the case and "there were no surprises in any way." *Id.* The Behavior Clinic reported that she was competent shortly after her arrest which would rule out a mental condition permitting a diminished capacity defense (H.T. at 71).

The difficulty with a diminished capacity defense is that it is very difficult to sustain. In *Commonwealth v. Brown*, 396 Pa.Super. 171, 578 A.2d 461 (1995), we held the existence of prior mental disorders was not relevant to appellant's alleged diminished capacity at the time of the criminal act. Here, appellee's testimony, that of arresting officers and trial counsel's preparation of the case, as well as the trial court's review of the Behavior Clinic report which deals with Legg's condition at the time of arrest, establishes that a diminished capacity defense would have been unavailing. The psychologist for Legg admitted total disagreement with the psychiatrist, Dr. Bowman, of the Behavior Clinic (as expressed in the report soon after the shooting). This indicates the difficulty with appellee's position at the time of trial. Testimony by

Legg's psychologist, Dr. Levit, is based on appellee's recollections five years after the crime when admittedly her recollections were vague. "Her memory was not that good on both of the occasions that I saw her." (H.T. at 14.) The entire testimony of Dr. Levit centered on how *he believed* Legg felt at the time she was admitted into St. John's Hospital for depression and anxiety. His attempt to extrapolate from those records and her testimony how she felt at the time of the killing are speculative at best. Depression and anxiety are among the most common and treatable of mental disorders and it is fair to say that a majority of interrelational homicides have some component of this disorder present.

Behavior Clinic psychiatrist Dr. Bowman interviewed Legg on August 11, 1986, three days after the shooting, and noted "[t]he defendant [Legg] tells me approximately two months ago she admitted herself into St. John's Hospital out of anger at this woman and a feeling she might do harm to her husband." (H.T. at 35.) Dr. Bowman noted anger against Legg's husband (H.T. at 34) which would contradict the lack of passion that Dr. Levit attempts to portray as consistent with depression. Finally, Dr. Levit, on cross-examination, stated "[w]hat Mrs. Legg told me when I examined her was that it was an accident. Now, whether in fact this was an accident or an essentially irrational moment, this happened wrong, none of us will ever know." (H.T. at 45.)

Hopeful of an acquittal, trial counsel relied primarily on the accident by misadventure theory. It cannot be said he provided her no defense. The defense of accident or unintentional killing derived from passion and unrequited love well could have resulted in a lesser finding of guilt than first degree murder. The trial judge was within his discretion to do precisely as trial counsel requested. It cannot be argued at this time that counsel did not have a rational reason to produce the defense he did and to avoid a course that admitted guilt and required a sentence for criminal homicide. Thus, the second prong of a successful claim of ineffectiveness of counsel has not been met pursuant to *Granberry, supra.*

We vacate the Order granting a new trial and remand for reimposition of the judgment of sentence.

Jurisdiction relinquished.