J-S44035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DARIN WRIGHT, | : | |
| | : | |
| Appellant | : | No. 1723 EDA 2015 |

Appeal from the PCRA Order May 11, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0009147-2008

BEFORE:  FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 28, 2016**

Darin Wright ("Wright") appeals from the Order denying his first Petition filed pursuant to the Post Conviction Relief Act.[1]  We affirm.

The PCRA court set forth the relevant factual and procedural history in its Opinion, which we adopt for the purpose of this appeal.  **See** PCRA Court Opinion, 7/10/15, at 1-3.[2]

On appeal, Wright raises the following issues for our review:

1. Was trial counsel ineffective because he failed to object – on due process grounds – to the [trial] court's initial and final instructions on demeanor evidence?

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] In its Opinion, the PCRA court incorporated the trial court's recitation of facts, wherein the trial court mistakenly indicated that "Defendant" was pronounced dead at the scene.  **See** PCRA Court Opinion, 7/10/15, at 2 (citing Trial Court Opinion, 4/19/12, at 2-3).  We assume that the trial court intended to indicate that "the victim" was pronounced dead at the scene.

2. Was direct [appeal] counsel ineffective because he waived [Wright's] claim that the prosecutor went outside the record in his summation?

3. Was trial counsel ineffective because he called Dr. Donald Tibbs as an expert in the area of hip-hop [music] to try to interpret the lyrics in the video made by [Wright]?

Brief for Appellant at 5 (capitalization omitted).

In his first issue, Wright points to the trial court's jury instruction on assessing the credibility of witnesses, and contends that "[n]o standards were imparted to the jury on how to judge 'a convincing manner,' or how to judge a witness's 'look,' or speech, or how to assess credibility from demeanor." *Id*. at 8. Wright asserts that his "trial counsel had no strategic reason for not objecting – on due process grounds – to these credibility factors in the court's charge." *Id*. Wright claims that the jury instruction violated his federal constitutional rights because it instructed the jury to draw inferences of credibility from factors that do not support an inference of credibility. *Id*. at 12. Wright argues that the trial court's jury instruction "throws irrational factors into the decision making process." *Id*. at 14. According to Wright, how the witness looked or acted, or the manner of speech used by the witness, has no bearing on the witness's credibility. *Id*. Wright asserts that, because the effect of the trial court's error cannot be assessed, it constitutes a structural error from which prejudice must be presumed. *Id*. at 16.

The PCRA court set forth the relevant law, addressed Wright's first issue, and determined that it lacks merit. ***See*** PCRA Court Opinion, 7/10/15, at 9. We agree with the reasoning of the PCRA court and affirm on this basis as to Wright's first issue. ***See id***.

In his second issue, Wright contends that, although his direct appeal counsel raised the claim that the trial court erred by denying Wright's Motion for a mistrial following the prosecutor's reference to evidence outside the record during his summation, the claim was deemed waived because direct appeal counsel provided no analysis, citation to the record, or citation to legal authority.[3] Brief for Appellant at 17. Wright asserts that this claim "was meritorious to the point that it could have won a new trial," and that direct appeal counsel had no strategic reason for waiving the claim. ***Id***. Wright claims that his trial counsel's approval of a curative instruction did not result in waiver of his Motion for mistrial based on the prosecutor's comments. ***Id***. at 18. Wright argues that the Commonwealth cannot show that the prosecutor's comments "in no way contributed to the verdict." ***Id***. at 22. Wright contends that direct appeal counsel was ineffective for failing to properly brief the issue. ***Id***. at 24.

The PCRA court set forth the relevant law, addressed Wright's second issue, and determined that it lacks merit. ***See*** PCRA Court Opinion,

---

[3] In his summation to the jury, the prosecutor argued that Wright's intent to kill the victim could be inferred from Wright's statement that the victim "caught me slipping, he caught me sleeping." PCRA Court Opinion, 7/10/15, at 7 (citing N.T., 9/12/11, at 81).

7/10/15, at 7-9; *see also Commonwealth v. Wright*, 68 A.3d 363 (Pa. Super. 2013) (unpublished memorandum at 9) (wherein a panel of this Court noted the "overwhelming evidence of [Wright's] guilt as established by eyewitness testimony at trial"). We agree with the reasoning of the PCRA court and affirm on this basis as to Wright's second issue. *See* PCRA Court Opinion, 7/10/15, at 7-9.

In his final issue, Wright contends that trial counsel's decision to call Dr. Donald Tibbs ("Dr. Tibbs") as an expert in hip-hop music, to provide opinion testimony regarding the meaning of the lyrics that Wright had used in his music video, constitutes a "misguided trial strategy [which] destroyed [Wright's] presumption of innocence and his character." Brief for Appellant at 28. Wright asserts that Dr. Tibbs did not specify as to what degree of certainty he held his opinions, and his opinions were not based on "scientific acceptability in [] published, peer[-]reviewed literature." *Id*. at 25. Wright claims that, at the conclusion of Dr. Tibbs's testimony, "the jury was left with [Dr. Tibbs's] essential position[,] which was [that Wright was] rapping about the shooting of a driver of a car with a 9[-]millimeter [gun] in broad daylight … [and it] was just a vast and terrible coincidence in that these facts matched the facts of the murder charged to [Wright]." *Id*. at 26-27. Wright argues that "[t]rial counsel apparently realized his dire mistake[,] and did not mention Dr. Tibbs in his closing address to the jury." *Id*. at 27.

Wright contends that, as a result of trial counsel's decision to present the testimony of Dr. Tibbs, Wright was deprived of a fair trial. *Id*. at 30.

The PCRA court set forth the relevant law, addressed Wright's third issue, and determined that it lacks merit. *See* PCRA Court Opinion, 7/10/15, at 4-6; *see also Commonwealth v. Talbert*, 129 A.3d 536, 541 (Pa. Super. 2015) (concluding that the defendant's rap music video describing the murder at issue was relevant and admissible). We agree with the reasoning of the PCRA court and affirm on this basis as to Wright's third issue. *See* PCRA Court Opinion, 7/10/15, at 4-6.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2016

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

v.

DARIN WRIGHT

CP-51-CR-0009147-2008 Comm. v. Wright, Darin K.
Opinion:

7317963261

CP-51-CR-0009147-2008

**FILED**

JUL 1 0 2015

**Post Trial Unit**

OPINION

BRONSON, J.                                                                                              July 10, 2015

## I. PROCEDURAL BACKGROUND

On September 13, 2011, following a jury trial before this Court, defendant Darin Wright

was convicted of one count of murder of the third degree (18 Pa.C.S. § 2502(c)) and one count of

carrying a firearm on a public street in Philadelphia (18 Pa.C.S. § 6108).[1]  On January 12, 2012,

the Court imposed an aggregate sentence of twenty to forty years incarceration in state prison.

Defendant did not file a post-sentence motion.  Defendant was represented at trial and at

sentencing by Joseph C. Arnold, Esquire, and on appeal by Nino Tinari, Esquire.

On February 15, 2013, the Superior Court affirmed defendant's judgment of sentence.

The Pennsylvania Supreme Court denied review on October 29, 2013.  On December 4, 2014,

Norris E. Gelman, Esquire, filed a Post-Conviction Relief Act Petition ("PCRA Petition")

claiming that prior counsel were ineffective.  Amended Petition at pp. 4-21.  On March 16, 2015,

after reviewing defendant's PCRA Petition and the Commonwealth's Motion to Dismiss, this

Court ruled that the claims set forth in defendant's petition were without merit.  That same day,

pursuant to Pa.R.Crim.P. 907, the Court issued notice of its intent to dismiss the petition without

---

[1] Defendant was acquitted of criminal conspiracy (18 Pa.C.S. § 903).  Co-defendant Dwayne Williams was acquitted of all charges.  N.T. 9/13/2011 at 6-7.

a hearing ("907 Notice"). On May 11, 2015, the Court entered an order dismissing defendant's PCRA Petition. This appeal followed.

Defendant has now appealed the Court's dismissal of his PCRA Petition, alleging that: 1) trial counsel was ineffective for calling Dr. Donald Tibbs as an expert in Hip-Hop music; 2) appellate counsel was ineffective for waiving defendant's claim that the Commonwealth went outside the record during his summation; and 3) trial counsel was ineffective for failing to object to the Court's charge concerning demeanor evidence. 1925(b) Statement – Nunc Pro Tunc ("Statement of Errors") at pp. 2-6. For the reasons set forth below, defendant's claims are without merit, and the PCRA Court's order dismissing his PCRA Petition should be affirmed.

## II. FACTUAL BACKGROUND

The factual background for defendant's conviction is summarized in this Court's Rule 1925(a) Opinion regarding defendant's direct appeal:

> On March 13, 2007, at approximately 4 p.m., John White picked up his girlfriend, Aliyah Banks, from her school and began driving down Cambria Street to take her home. N.T. 9/7/2011 at 161-163. At the corner of 24th Street and Cambria Street, defendant and Dwayne Williams were standing in front of a barber shop. N.T. 9/7/2011 at 199-200; 9/8/2011 at 122. As Mr. White pulled his car up to the corner, he, defendant, and Mr. Williams began arguing and "talking trash" back and forth. N.T. 9/7/2011 at 204-205; 9/8/2011 at 125-126. The argument continued until Mr. White drove off, dropping off Ms. Banks near her home at the corner of 23rd Street and Cambria Street. N.T. 9/7/2011 at 161-163, 203-204. After Mr. White left, defendant said "fuck that nigger" and "[t]he next time I see him, I'm going to hit him." N.T. 9/8/2011 at 127-128.
>
> After dropping off Ms. Banks, Mr. White returned to the corner of 24th Street and Cambria Street, and the three men continued arguing. N.T. 9/7/2011 at 209. As Mr. White sat in his car, defendant, who was standing four to five feet away from Mr. White, pointed a silver handgun into the driver's side window of the car and fired three to five shots at him. N.T. 9/7/2011 at 212-216; 9/8/2011 at 130-131. Mr. White, who was shot once in the head, fell forward and lost control of the car, which travelled forward for approximately two blocks before it crashed into a house at the corner of Taylor Street and Cambria Street. N.T. 9/7/2011 at 216; 9/8/2011 at 101, 131. Defendant was pronounced dead at the scene. The cause of Mr. White's death was the gunshot wound to his head, which had killed him instantly. N.T. 9/8/2011 at 101, 113.

2

Trial Court Opinion, filed April 19, 2012, pp. 2-3.

## III. DISCUSSION

An appellate court's review of a PCRA court's grant or denial of relief "is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error." *Commonwealth v. Yager*, 685 A.2d 1000, 1003 (Pa. Super. 1996) (citing *Commonwealth v. Legg*, 669 A.2d 389, 391 (Pa. Super. 1995)). The reviewing court "will not disturb findings that are supported by the record." *Id.*

Here, defendant's claims pertain to the alleged ineffective assistance of trial and appellate counsel. Under Pennsylvania law, counsel is presumed effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000), n.10 (citing *Commonwealth v. Copenhefer*, 719 A.2d 242, 250 (Pa. 1998)). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009); *Commonwealth v. Pierce*, 527 A.2d 973, 974-75 (Pa. 1987). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694). If the PCRA court determines that any one of the three prongs cannot be met, then the court need not hold an evidentiary hearing as such a hearing would serve

3

no purpose. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008), *app. denied*, 956 A.2d 433 (Pa. 2008).

A. *Testimony of Dr. Donald Tibbs*

Defendant first asserts that trial counsel was ineffective for calling Dr. Donald Tibbs to testify as an expert in the area of Hip-Hop music to interpret the lyrics of a YouTube video of defendant rapping after White's murder. It was the Commonwealth's position that this rap described White's murder and was, in effect, an admission by defendant that he shot and killed White. N.T. 9/7/11 at 233-239. The Commonwealth called Troy Burton, an eyewitness to the murder who grew up in defendant's community, was familiar with all the parties involved, and was familiar with the vernacular used by defendant in the video, in order to explain the meaning of the lyrics. N.T. 9/7/11 at 240-242; 253-271. The defendant called Dr. Tibbs to dispute Burton's interpretation of the lyrics, and to refute the Commonwealth's contention that the video was an admission of guilt by defendant.

Dr. Tibbs was an associate Professor of Law at the Earle Mack School of Law at Drexel University, and a scholar in Hip-Hop and rap music. He had published articles and participated in conferences concerning Hip-Hop, had lectured on Hip-Hop for approximately two-and-a-half years prior to trial, and was scheduled to teach a class at Drexel University entitled "Hip-Hop and the Law." N.T. 9/9/11 at 110-117.[2] Defendant now claims that that trial counsel was ineffective for calling Dr. Tibbs as a witness for two reasons: (1) Dr. Tibb's interpretations of the video were not admissible under the rules of evidence; and (2) the introduction of Tibb's testimony regarding rap permitted the Commonwealth to link defendant to "a culture so far out

---

[2] The Notes of Testimony for September 9, 2011 were incorrectly dated September 9, 2010. These notes are cited herein using the correct date of September 9, 2011.

4

of the pale [of a] reasonable society as to shock the conscience of the jury" and thus destroy defendant's character. Statement of Errors at pp. 2-4. Both claims are without merit.

1. Admissibility of Dr. Tibb's Testimony

Defendant asserts that Dr. Tibbs' testimony was inadmissible as he "never specified to what degree of certainty he held [his] opinions" and did not "establish that his opinion was based on scientific acceptability in the published, peer reviewed literature..." Statement of Errors at p. 2. This argument is frivolous. Dr. Tibb's expert testimony was offered by *defendant* in order to support his argument that the rap video was not a confession to the murder. The rules governing the admissibility of evidence protect the *opponent* of the evidence from having the factfinder consider it if it is not admissible. Assuming *arguendo* that the evidence was not admissible, and yet was helpful to the defense, defense counsel could not have been constitutionally ineffective for proffering such evidence. If, of course, the evidence were not helpful to the defense, then it might have been error for defense counsel to present it whether or not the evidence was admissible under the rules. That issue is addressed in defendant's next argument, below.

2. Linking Defendant to Rap Culture and Destroying his Character

Defendant also asserts that trial counsel was ineffective for introducing Dr. Tibbs' testimony as it linked defendant to "a culture so far out of the pale of reasonable society as to shock the conscience," and that this testimony prejudiced defendant by destroying his character. Statement of Errors at p. 3. This argument is refuted by the record.

The YouTube video introduced by the Commonwealth was arguably highly incriminating of defendant. In the video, as interpreted by the Commonwealth's witness, defendant spoke, among other things, about a conflict between two neighborhoods in which defendant loaded up a nine-millimeter handgun and shot someone who was unarmed in broad daylight, and who was

5

driving a car. N.T. 9/7/11 at 240-242; 253-271. All of this matched the Commonwealth's evidence of the murder here at issue. To refute that compelling evidence, the defense called Professor Tibbs, who challenged the Commonwealth's interpretation of the lyrics. Dr. Tibbs testified that defendant's rap "is normative to what we call gangsta rap music and that the lyrics themselves contain more generalities than they do specificities and as a result of that it's difficult ... to make a positive statement of proof that he is actually talking about the facts that are alleged in this case." N.T. 9/9/11 at 120. Dr. Tibbs further testified that gangsta rap musicians include such individuals as Ice Cube, Jay-Z, and Kanye West, artists well known for their music, which include violent lyrics that are not indicative of real crimes of violence. N.T. 9/9/11 at 122-130. Dr. Tibbs also testified that, based on the video and lyrics, that defendant mixed "so many metaphors that it's completely difficult to discern when he's talking about doing something really and when he's talking about it in a metaphorical sense." N.T. 9/9/11 at 163. Accordingly, trial counsel sought to establish through Dr. Tibbs' testimony that defendant was not rapping about the facts of this case, but was instead attempting to "get discovered so that [defendant could] make it into the big time..." and that defendant's song "sounds like a very sort of generic version of gangsta rap." N.T. 9/9/11 at 131, 167.

Without the testimony of Dr. Tibbs, the defense would have left unchallenged the Commonwealth's interpretation of the rap as being tantamount to a video confession. Dr. Tibbs, who was eminently qualified, directly contradicted that evidence. Accordingly, the record demonstrates that trial counsel had a reasonable basis for calling Dr. Tibbs' as a witness. Counsel, therefore, could not have been ineffective for presenting this testimony. *See Commonwealth v. Collins,* 957 A.2d 237, 250 (Pa. 2008) (counsel not ineffective as he had a reasonable basis for deciding which witnesses to call at trial).

6

B. *Prosecutor's Summation*

Defendant next asserts that appellate counsel was ineffective "because he waived [defendant's] claim that the prosecutor went outside the record in his summation in trying to convict him." Statement of Errors at pp. 4-5. This claim is without merit.

It is well-established that an assistant district attorney's comments during closing argument do not require a new trial unless the "unavoidable effect" of the comments "would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Linder*, 425 A.2d 1126, 1128 (Pa. Super. 1981) (quoting *Commonwealth v. Stoltzfus*, 337 A.2d 873, 882 (Pa. 1975)). Additionally, "[a] mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." *Commonwealth v. Spotz*, 716 A.2d 580, 593 (Pa. 1998).

At trial, defendant moved for a mistrial because of the following argument by the Commonwealth:

> **[Assistant District Attorney]:** The third way we know that there was intent to kill, *his own words before the shooting, he caught me slipping, he caught me sleeping. He's unarmed. Remember Darin Wright is unarmed when the conflict starts. He says to anybody that will hear, he caught me slipping.* When he comes back, I'm going to hit him. When he comes back, I'm going to kill him. That's the third way we know he possesses specific intent to kill.

N.T. 9/12/2011 at 81 (emphasis added). At the conclusion of closing arguments, and outside the presence of the jury, defense counsel objected to the specific portion of the Commonwealth's argument in which defendant was quoted as having said "he caught me slipping." N.T. 9/12/2011 at 123-124. As defense counsel correctly pointed out, the reference to defendant saying that Mr. White "caught [him] slipping" came from a portion of Dwayne Williams's statement that was not in evidence. N.T. 9/12/2011 at 123-124. As such, the Court sustained the

7

objection and gave the following instruction immediately after the jury returned to the courtroom:

> Before I get to the charge I have a preliminary matter that I need to raise with you, ladies and gentlemen. During his closing the Assistant District Attorney Mr. O'Malley made reference to an alleged statement of defendant Wright that, quote, he could have caught me slipping, close quote. There was no evidence as to that and I direct you folks to disregard the portion of Mr. O'Malley's argument regarding that alleged statement.

N.T. 9/12/2011 at 128.

Defendant sought review of the Court's denial of his motion for mistrial before the Superior Court, which held that the claim was waived due to appellate counsel's failure to provide analysis or citations to the record or legal authority to support this claim. Superior Court Opinion, filed February 15, 2013, pg. 2 n. 4. Defendant now claims that appellate counsel was ineffective for failing to properly present this issue to the Superior Court.

Defendant's claim of appellate counsel ineffectiveness should be rejected because the claim that counsel waived is clearly without merit. Because the Court sustained defendant's objection and promptly gave a curative instruction, the Court properly denied defendant's motion for a mistrial. The reference to defendant complaining that he was caught "slipping," a reference that defense counsel believed to mean "unarmed," N.T. 9/12/2011 at 125, was a reference that the jury was unlikely to comprehend. Additionally, the reference was part of the Commonwealth's argument regarding defendant's specific intent to kill White, which was rejected by the jury as defendant was not convicted of first-degree murder. Because the Court not only instructed the jury to disregard the offending comment, but also advised it that the comment was not based on any evidence, the momentary reference to defendant "slipping" could not conceivably have prejudiced defendant to the point that it deprived him of a fair trial. Since appellate counsel could not have been ineffective for failing to properly present a meritless claim

8

to the Superior Court, no relief is due. *See Commonwealth v. Tedford,* 960 A.2d 1, 33 (Pa. 2008) (appellate counsel not ineffective for declining to challenge prosecutor statements in closing arguments as defendant was not prejudiced by the statements).

C. *Court's Charge on Demeanor Evidence*

Finally, defendant asserts that "trial counsel was ineffective for failing to object to the Court's Due Process deficient charge on demeanor evidence." Statement of Errors at p. 6. Specifically, defendant claims that the following instruction was in error: "The following are some of the factors that you may and should consider when judging credibility and deciding whether or not to believe testimony:... Third, did the witness testify in a convincing manner, how did he or she look, act and speak while testifying, was his or her testimony uncertain, confused, self-contradictory or evasive." N.T. 9/10/12 at 134-135.

This claim is frivolous. The challenged instruction regarding demeanor evidence is taken directly from Pennsylvania Suggested Standard Jury Instruction 4.17. *See* Pa.SSJI 4.17 ("Did the witness testify in a convincing manner? [How did [he][she] look, act, and speak while testifying? Was [his][her] testimony uncertain, confused, self-contradictory, or evasive?]"). The Pennsylvania Supreme Court has previously held that Pa.SSJI 4.17 "provide[s] the jury with those factors that are properly considered in ascertaining credibility." *Commonwealth v. Snoke,* 580 A.2d 295, 299-300 (Pa. 1990). Because there was no basis for counsel to object to the charge, counsel could not have been ineffective for failing to do so.

9

## IV. CONCLUSION

For the foregoing reasons, the Court's order dismissing Defendant's PCRA petition should be affirmed.

BY THE COURT:

_____

GLENN B. BRONSON, J.