J-S59044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LARRY MULLINS | |
| Appellant | No. 115 EDA 2016 |

Appeal from the PCRA Order December 28, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-1011611-1995

BEFORE: BENDER, P.J.E., OLSON, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:          **FILED SEPTEMBER 07, 2016**

Appellant, Larry Mullins, appeals from the order dismissing his second Post Conviction Relief Act[1] ("PCRA") petition. Appellant claims that newly-discovered evidence from a witness, who was previously interviewed prior to his trial, warrants relief. We affirm.

We adopt the facts and procedural history set forth in the PCRA court's opinion. PCRA Ct. Op., 1/27/16, at 1-3. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. Appellant raises the following issue:

> Did the PCRA court err when it denied Appellant PCRA relief in the absence of an evidentiary hearing since Appellant is entitled to PCRA relief in the form of a new trial based upon the existence of after-discovered evidence?

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

Appellant's Brief at 4. Appellant contends he obtained newly-discovered evidence from the victim's girlfriend, Tameka Ledbetter, who was interviewed by the police after the victim's death.

Before addressing the merits of Appellant's claims, our Supreme Court has required this Court to examine whether we have jurisdiction to entertain the underlying PCRA petition. *See Commonwealth v. Fahy*, 737 A.2d 214, 223 (Pa. 1999). "Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and free of legal error." *Commonwealth v. Wilson*, 824 A.2d 331, 333 (Pa. Super. 2003) (*en banc*) (citation omitted). A PCRA petition "must normally be filed within one year of the date the judgment becomes final . . . unless one of the exceptions in § 9545(b)(1)(i)-(iii) applies and the petition is filed within 60 days of the date the claim could have been presented." *Commonwealth v. Copenhefer*, 941 A.2d 646, 648 (Pa. 2007) (internal citations and footnote omitted).

> Jurisdictional time limits go to a court's right or competency to adjudicate a controversy. These limitations are mandatory and interpreted literally; thus, a court has no authority to extend filing periods except as the statute permits. Unlike a statute of limitations, a jurisdictional time limitation is not subject to equitable principles such as tolling except as provided by statute. Thus, the filing period is only extended as permitted; in the case of the PCRA, the time limitations are extended upon satisfaction of the exceptions found in § 9545(b)(1)(i)-(iii) and timely filing pursuant to (b)(2). As it has been established that the PCRA's time restrictions are jurisdictional, we hold that

the period for filing a PCRA petition is not subject to the doctrine of equitable tolling, save to the extent the doctrine is embraced by § 9545(b)(1)(i)-(iii).

*Fahy*, 737 A.2d at 222 (citations omitted).

The three timeliness exceptions are:

(i) The failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

"[S]ubsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of 'after-discovered evidence.' Rather, it simply requires petitioner to allege and prove that there were 'facts' that were 'unknown' to him and that he exercised 'due diligence.'" *Commonwealth v. Bennett*, 930 A.2d 1264, 1270 (Pa. 2007) (footnote omitted). "If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection." *Id.* at 1272.

Instantly, we review whether the PCRA court erred by holding Appellant's second PCRA petition was untimely. *See* 42 Pa.C.S. §

9545(b)(1); *Fahy*, 737 A.2d at 222. After careful review of the parties' briefs, the record, and the decision by the PCRA court, we affirm on the basis of the PCRA court's decision. *See* PCRA Ct. Op. at 4-6 (holding (1) Appellant failed to establish due diligence because witness was known to him in 1993 and thus, he could have raised claims on direct appeal and in prior PCRA petitions; and (2) Appellant failed to establish due diligence of the alleged *Brady* violation; as our Supreme Court held, even evidence of a *Brady* violation must be pursued with due diligence by the defendant).

Further, as the PCRA court noted, a prior panel of the Superior Court addressed Appellant's claim with respect to his co-defendant, James Kelly. *Commonwealth v. Kelly*, 3544 EDA 2013, 2014 WL 10795093 at *3 (Pa. Super. Oct. 10, 2014).[2] The *Kelly* Court rejected Ledbetter's evidence: "the Commonwealth presented sufficient evidence to establish Kelly's guilt, such that Ledbetter's identification of Sharif Curry as the shooter would not likely have changed the outcome of the trial." *Commonwealth v. Kelly*, 3544 EDA 2013, 2014 WL 10795093 at *4 (Pa. Super. Oct. 10, 2014). The *Kelly* panel explained as follows:

> the Commonwealth presented the testimony of two eyewitnesses who identified Kelly and Mullins. The first, Ernestine Williams, witnessed Kelly hand an object to Mullins, who placed the object inside his jacket and held onto it inside the jacket as he approached the victim; he then removed his hand from his jacket, holding a gun, and

---

[2] We acknowledge the non-precedential designation of this decision.

shot the victim multiple times. Williams testified that there was "no doubt in [her] mind" that Kelly and Mullins were the individuals involved in the shooting. N.T. Trial, 8/14/96, at 132. Williams further testified as follows:

[Williams]: I remember seeing [Kelly and Mullins] at the corner of my block making a transaction, and I remember seeing [Mullins] shoot [the victim], I seen him shoot him in his head behind his ear and he fell in his arms and he laid him on the ground and he stood back and he shot him again. **I remember that very well. And I'll never forget it.**

[Defense Counsel]: You saw these two men doing a transaction?

A: Yes.

Q: What kind of transaction?

A: [Kelly] handed [Mullins] something. And [Mullins] never took his hand out until he got to [the victim].

*Id.* at 176 (emphasis added).

A second witness, Colie Baxter, testified that he was driving his car at the intersection of 25th and Diamond Streets when he heard "five to six shots." N.T. Trial, 8/15/96, at 8. He pulled his car over and then witnessed two men, who he later identified as Kelly and Mullins, run out of an alleyway, get into a car, and drive away. One of the men was "holding something down by [his] side." *Id.*

*Id.* at *4. "Ledbetter's statement, even if true, would neither have exculpated Kelly nor changed the outcome of his trial." *Id.* at *6. We agree with the reasoning of the ***Kelly*** Court and similarly conclude that Ledbetter's statement, even if true, would not have exculpated Appellant, particularly since—unlike Kelly—Appellant was identified as the shooter. Accordingly,

- 5 -

having discerned no abuse of discretion or error of law, we affirm. ***See***

***Wilson***, 824 A.2d at 333.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2016

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-1011611-1995 |
| | : | |
| v. | : | FILED |
| | : | |
| LARRY MULLINS | : | JAN 2 7 2016 |
| | OPINION | Post Trial Unit |

BRONSON, J.                                                        January 27, 2016

## I. PROCEDURAL BACKGROUND

On August 21, 1996, following a jury trial before the Honorable James A. Lineberger of this Court, defendant Larry Mullins was convicted of one count of first-degree murder (18 Pa.C.S. § 2502) and one count of criminal conspiracy (18 Pa.C.S. § 903). On January 16, 1997, Judge Lineberger imposed a life sentence on the murder charge and a sentence of four to eight years imprisonment on the conspiracy charge.[1] Defendant was represented at trial and at sentencing by Charles Mirarchi, Esquire.

On December 12, 1997, the Superior Court affirmed defendant's judgment of sentence. The Pennsylvania Supreme Court denied *allocator* on July 13, 1998. Defendant then filed a *pro se* petition ("First Petition") under the Post-Conviction Relief Act ("PCRA") on July 21, 1999. On June 10, 2003, the PCRA Court denied defendant's First Petition and the Superior Court dismissed defendant's subsequent appeal on September 19, 2003. Defendant filed a second *pro se* PCRA petition ("Second Petition") on March 12, 2006, which the PCRA Court dismissed as untimely on July 14, 2006. On December 31, 2012, defendant filed a Petition for Writ of

---

[1] Defendant was tried with his co-defendant James Kelly, who was also convicted of first-degree murder and criminal conspiracy at docket number CP-51-CR-1011621-1995. Kelly was sentenced to life in prison on August 21, 1996.

*Habeas Corpus*, seeking relief due to newly discovered evidence ("Third Petition"). As Judge

Lineberger had retired from the bench, the matter was reassigned to the undersigned trial judge.

Janis Smarro, Esquire was appointed to represent defendant on March 26, 2014. On October 8,

2014, Ms. Smarro filed an Amended PCRA Petition ("Amended Petition") raising the sole claim

that defendant was entitled to a new trial due to newly discovered evidence in the form of a

statement by Tameka Ledbetter, the girlfriend of the decedent. Amended Petition at ¶¶ 14-23.

On November 10, 2015, after reviewing defendant's PCRA Petition and the Commonwealth's

Motion to Dismiss, this Court ruled that the claims set forth in defendant's petition were without

merit. That day, pursuant to Pa.R.Crim.P. 907, the Court issued notice of its intent to dismiss

the petition without a hearing ("907 Notice"). On December 28, 2015, the Court entered an

order dismissing defendant's PCRA Petition. This appeal followed.

Defendant has now appealed the Court's dismissal of his PCRA Petition, alleging that: 1)

the PCRA Court erred in denying an evidentiary hearing regarding witness Tameka Ledbetter

since Ledbetter's statement was newly discovered evidence and; 2) that the Commonwealth's

failure to inform defendant at the time of trial that Ledbetter had made a different identification

to police constituted governmental interference. Concise Statement of Errors Complained of on

Appeal. ("Statement of Errors") at pp. 1-2. For the reasons set forth below, defendant's claims

are without merit, and the PCRA Court's order dismissing his PCRA Petition should be affirmed.

## II. FACTUAL BACKGROUND

The facts of this case are summarized in the Superior Court's opinion of July 9, 1999,

affirming the trial court's judgment of sentence in co-defendant Kelly's direct appeal as follows:

> On January 1, 1993, at about 7:30 p.m., [James] Kelly and Larry
> Mullins...were walking along North Bambry Street in North Philadelphia. At that
> time, the victim, Travis Hughston, was visiting his girlfriend, Tamika Ledbetter,
> at the home of her uncle. Mullins and Kelly were walking toward the home of
> Ledbetter's uncle, which Ledbetter frequented. Before they reached her uncle's
> house, Kelly passed a brown bag to Mullins, who placed the bag inside his coat.

2

Moments later, after Hughston exited the house, Mullins shot Hughston, hitting him once in the arm and shoulder, and then once in the head. Both Kelly and Mullins immediately ran away. Rescue workers took Hughston to Allegheny University Hospital Medical College of Pennsylvania, where the doctors pronounced him dead from a gunshot wound to the back of his head.

Superior Court Opinion, *Commonwealth v. Kelly*, No. 1799 Philadelphia 1998, filed 7/9/99 at pp. 1-2.

## III. DISCUSSION

An appellate court's review of a PCRA court's grant or denial of relief "is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error." *Commonwealth v. Yager*, 685 A.2d 1000, 1003 (Pa. Super. 1996) (citing *Commonwealth v. Legg*, 669 A.2d 389, 391 (Pa. Super. 1995)). The reviewing court "will not disturb findings that are supported by the record." *Id.*

Under the PCRA, all petitions, "including a second or subsequent petition," must be filed within one year of the date that judgment on the case became final. 42 Pa.C.S. § 9545(b); *see Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). This time limit is jurisdictional, and a court may only review an untimely petition if one of the three statutory exceptions to the timeliness requirement applies. 42 Pa.C.S. § 9545(b)(1); *Commonwealth v. Murray*, 753 A.2d 201, 203 (Pa. 2000). Furthermore, the statutory exceptions are themselves subject to a timeliness requirement, and must be invoked "within sixty days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2); *see Bennett*, 930 A.2d at 1267-68.

In the instant case, defendant's petition was clearly untimely, as it was filed more than fourteen years after defendant's judgment of sentence became final. Therefore, in order for this Court to have jurisdiction to review the merits of defendant's claim, defendant must plead and prove that one of the three statutory exceptions to the timeliness requirement applies to his case, and he must have filed his petition within sixty days of when the claim could have been

3

presented. *See, e.g., Commonwealth v. Geer*, 936 A.2d 1075, 1077 (Pa. Super. 2007), *appeal denied*, 948 A.2d 803 (Pa. 2008). Defendant now avers that his petition is timely under both the newly discovered evidence exception to the PCRA and as a result of governmental interference. Statement of Errors at pp. 1-2.

### A. After Discovered Evidence

The PCRA provides for an exception to its timeliness requirement when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). Accordingly, to properly rely upon this exception, defendant must demonstrate that his Third Petition is premised upon facts that were newly discovered by defendant within sixty days of when he filed the Third Petition, and he must establish that he could not have discovered such facts previously through the exercise of due diligence. "To obtain a new trial based on after-discovered evidence, the petitioner must explain why he could not have produced the evidence in question at or before trial by the exercise of reasonable diligence....A defendant cannot claim he has discovered new evidence simply because he had not been expressly told of that evidence. Likewise, a defendant who fails to question or investigate an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence." *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super.), *app. denied*, 14 A.3d 826 (Pa. 2010) (internal citations omitted). Further, when a defendant had been aware of a potential witness's identity, but failed to reasonably investigate that witness's version of the facts, the subsequent discovery of favorable evidence from that witness does not constitute newly-discovered evidence. *Commonwealth v. Kubis*, 808 A.2d 196, 201 (Pa. Super.), *app. denied*, 813 A.2d 839 (Pa. 2002).

Here, the newly discovered evidence upon which defendant relies consists of a statement by witness Tameka Ledbetter. Defendant asserts that Ledbetter, who was interviewed by a

4

private investigator on co-defendant Kelly's behalf on September 18, 2012, has provided facts that could not have been obtained by the exercise of due diligence by defendant, who was notified of Ledbetter's interview on November 15, 2012.[2] Amended Petition at ¶¶ 14-23. Ledbetter was the girlfriend of defendant's victim, Travis Hughston, who was killed immediately after leaving Ledbetter's home on January 1, 1993. *See* Amended Petition at ¶ 11. Police interviewed Ledbetter less than two hours after Hughston's murder, and she stated that she did not witness the shooting and was unable to identify anyone involved. *See* Exhibit E to Amended Petition. More than 19 years later, co-defendant Kelly sent a private investigator to interview Ledbetter. *See* Amended Petition at ¶¶ 16-21. Ledbetter informed the investigator that on the night of the murder, immediately after she heard gunshots, she ran onto her porch and saw a man whom she knew, Anthony "Sharif" Curry, walking away from the victim with a gun in his hand. *See* Amended Petition at ¶ 17; Exhibit D to Amended Petition. Ledbetter told Kelly's investigator that when she had given her statement to police in 1993, she had informed them that Curry, who passed away on January 13, 1995, was the shooter, but police never wrote down the name and insisted that the shooter was someone else. *See* Exhibit F to Amended Petition.

Despite filing post-sentence motions, an appeal, and two prior PCRA petitions, defendant never investigated Ledbetter's account of the shooting and proffers as "newly discovered evidence" a statement of Ledbetter obtained by co-defendant Kelly's investigator on September 18, 2012, nearly two decades after the shooting took place. However, Ledbetter, who was

---

[2] Co-defendant Kelly filed a PCRA petition based on Ledbetter's interview on November 15, 2012. After this Court dismissed Kelly's petition as untimely, the Superior Court affirmed the dismissal on October 14, 2014 and the Pennsylvania Supreme Court denied *allocator* on April 24, 2015. Specifically, the Superior Court stated, "he [Kelly] claims to have uncovered exculpatory eyewitness evidence allegedly suppressed by the police at the time of trial. Kelly asserts that he filed his PCRA petition within 60 days of discovering this evidence and that the trial court should, at the very least, have convened a hearing to determine whether relief was warranted. We find this claim to be without merit." Suprior Court Opinion, 3544 EDA 2013, filed 10/10/14 at p. 6. The Superior Court reasoned that, while Ledbetter's statements "may have been exculpatory as to Mullins, [it] would not have benefitted Kelly, who was never accused of being the shooter." *Id.* at p. 9. However, the Superior Court also held that the Commonwealth presented sufficient evidence establishing that defendant and Kelly shot the victim in this case such that Ledbetter's identification to the contrary would not have changed the outcome of trial. *Id.* at 10.

interviewed by police on the day of the murder, was an obvious and available witness at the time of the trial, with both the Commonwealth and defendant being aware of her identity. Despite that fact, she was not interviewed by defendant at the time of trial, nor called as a witness by either side. Ledbetter's interview with co-defendant's investigator more than 19 years after she gave her statement to police clearly does not amount to newly discovered evidence. *Kubis*, 808 A.2d at 201. Defendant therefore cannot overcome the PCRA's time bar by the newly discovered evidence exception to the PCRA's timeliness requirement.

Defendant also cannot avoid the time bar by blaming the lack of due diligence on counsel. Evidence that would have been discovered by competent counsel is not evidence that could not have been obtained through reasonable diligence. *Commonwealth v. Washington*, 927 A.2d 586, 598 (Pa. 2007).

### B. Interference by Government Officials

The PCRA provides for an exception to its timeliness requirement when "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States." 42 Pa.C.S. § 9545(b)(1)(i). To properly rely on this exception, defendant must demonstrate that his failure to raise the claim in a timely manner was the result of a constitutional violation by government officials, and he must demonstrate that he raised the claim within sixty days of when he discovered the violation. Here, defendant claims governmental interference by police in attempting to get Tameka Ledbetter to say that someone other than Sharif Curry was responsible for the shooting, and by omitting her identification of Sharif Curry as the shooter from the statement that she signed. Statement of Errors at ¶ 1; Amended Petition at ¶ 25.

6

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), exculpatory evidence not disclosed to the defense will give rise to a due process violation and will require a new trial if the exculpatory evidence is "material" either to guilt or punishment. 373 U.S. at 87; *see also* Pa.R.Crim.P. 573(B)(1)(a) (specifying, as mandatory discovery, "[a]ny evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth"). If the police possess evidence that is favorable to the defense, then the Commonwealth is deemed to be responsible for its disclosure even if it is solely in the possession of the police. *See Commonwealth v. Lambert*, 884 A.2d 848, 853 (Pa. 2005) (quoting *Brady*, 373 U.S. at 87). "Although a *Brady* violation may fall within the governmental interference exception, the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008).

Here, the same lack of due diligence discussed in Section III(A), above, bars defendant's governmental interference claim. Had defendant timely interviewed Tameka Ledbetter, he would have discovered the alleged *Brady* violation. Therefore, he cannot overcome the PCRA's time bar by the governmental interference exception to the PCRA's timeliness requirement. *Abu-Jamal*, 941 A.2d at 1268. Additionally, as with defendant's after-discovered evidence claim in Section III(A), defendant cannot avoid the time bar by blaming the lack of due diligence on counsel. *Washington*, 927 A.2d at 598.

7

## IV. CONCLUSION

For the foregoing reasons, the Court's order dismissing defendant's PCRA Petition should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.