J-S79011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      :                 PENNSYLVANIA

                v.                                  :

ALONZO ELLISON                          :

              Appellant            :       No. 1014 EDA 2017

Appeal from the PCRA Order February 10, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006872-2009

BEFORE: GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                         **FILED MARCH 13, 2018**

Alonzo Ellison appeals from the order entered in the Court of Common Pleas of Philadelphia County, on February 10, 2017, denying him relief on his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*. In this timely appeal, Ellison raises eight claims of error. Our review of the submissions by the parties, relevant law, and the certified record, leads us to find the PCRA judge, the Honorable Glenn B. Bronson, has authored a thorough decision that is supported by the record and free from legal error. Accordingly, we affirm the analysis in that opinion with some additional commentary.

Although we affirm on the basis of the PCRA court opinion, we will provide a brief synopsis of this matter. Initially, our standard of review for an appeal of an order denying PCRA relief is well settled.

> Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. **Commonwealth v. Ford**, 947 A.2d 1251 (Pa. Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa. Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007).

**Commonwealth v. Shiloh**, 170 A.3d 553, 556 (Pa. Super. 2017).

The certified record reveals that in the early morning hours of July 18, 2008, three men, including Ellison, shot and killed Barry Jacobs, Jr., in an apparent dispute over drug territory.[1]  One of the witnesses to the shooting, Antoinette Gray, had by-passed the defendants and purchased crack cocaine from Jacobs.  While she was still near Jacobs, all three defendants shot Jacobs. Ellison was seen standing over Jacobs' fallen body and firing at least one shot into his head.  Gray gave a statement to the police identifying the men as the perpetrators.

In addition to Gray, Jeffrey Gould told the police he heard several gunshots and went to his window where he saw a person he identified as Ellison stand over Jacobs and shoot him in the head.

Eleanore Sampson told the police that the three men came to her apartment after the shooting occurred and talked about how they had killed Jacobs. Sampson told the police she saw the men carrying a 9 mm semiautomatic, a .45 caliber semiautomatic, and a .32 caliber revolver.  Those

---

[1] The other two men, Mikechel Brooker and Ferock Smith, were tried with Ellison.  All were convicted.

- 2 -

calibers matched the forensic evidence taken at the scene and from Jacobs' autopsy. Sampson told the men not to leave the weapons in her apartment. While the other two men left Sampson's apartment, Ellison fell asleep there. He attempted to flee when the police arrived that morning to interview people who may have witnessed the crime. A .32 caliber revolver was found in Sampson's apartment.[2]

All three witnesses' police statements were transcribed verbatim and were signed by the witnesses. All three witnesses recanted their statements at trial. Nevertheless, the jury convicted Ellison of first-degree murder and related offenses. He received a sentence of life imprisonment. Ellison filed a direct appeal that afforded him no relief. *See Commonwealth v. Ellison*, 107 A.3d 233, 2014 WL 10575202, (Pa. Super. 2014) (unpublished memorandum).[3] The Pennsylvania Supreme Court denied Ellison allowance of appeal on April 29, 2015. *Commonwealth v. Ellison*, 114 A.3d 1038 (Pa. April 29, 2015). Ellison filed this, timely, PCRA petition on July 10, 2015. Counsel was appointed and the matter was assigned to the Honorable Glenn B. Bronson.[4] Counsel filed an amended PCRA petition on August 13, 2016.

---

[2] This weapon was determined not to have been involved in the shooting.

[3] In separate decisions, the convictions of Ellison's co-defendants, Mikechel Brooker and Ferock Smith, were also affirmed on September 23, 2014. *See Commonwealth v. Brooker*, 103 A.3d 325 (Pa. Super. 2014); *Commonwealth v. Smith*, 107 A.3d 233 (Pa. Super. 2014) (unpublished memorandum).

[4] The trial judge, the Honorable Carolyn Engel Temin, had retired.

On December 29, 2016, the PCRA court issued notice pursuant to Pa.R.Crim.P. 907 of intent to dismiss the petition without a hearing. The PCRA court did so on February 20, 2017. Ellison filed this timely appeal.

As noted above, Ellison has raised eight issues. They are: 1) trial counsel was ineffective for misrepresenting the scope of Commonwealth witness Jeffrey Gould's cooperation agreement; 2) appellate counsel was ineffective for failing to present a claim that the Commonwealth was improperly allowed to cross-examine and lead its witness Eleanore Sampson with her statement to the police; 3) trial counsel was ineffective for failing to object to the jury instruction on first-degree murder, specifically regarding the definition of premeditation or deliberation; 4) Commonwealth witness, Detective Verrechio was improperly allowed to testify that eyewitness Gray was terrified and scared to be involved in the case; 5) trial counsel was ineffective for failing to request a ***Kloiber***[5] charge; 6) trial counsel was ineffective for failing to file a motion to sever and Rule 600 motion; 7) appellate counsel was ineffective for failing to claim trial counsel erred in allowing witness statements to be sent to the jury during deliberations; and 8) Ellison's life sentence without parole is unconstitutional as he was 19 years old when the crime was committed. Also, as noted above, the PCRA court has authored a comprehensive opinion, conducting a thorough analysis of all the issues raised in this appeal.

---

[5] ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954).

We write separately to highlight the PCRA court's conclusions on two of the issues. We have reviewed the certified record, including all notes of testimony.[6] Regarding Issue Two, all three eyewitnesses[7] to the murder "went south" at trial, recanting their statements. All three witnesses were questioned regarding their prior statements to the police, which were read into the record. These statements were not being used to refresh the recollections of the witnesses; they were properly introduced into evidence as prior inconsistent statements.

Finally, regarding Issue Three, Ellison claims trial counsel was ineffective for failing to object to the jury charge for first-degree murder. He argues the jury charge did not adequately explain certain elements of the crime,

_____

[6] We feel the need to point out that our resolution of this matter was delayed by the fact that the notes of testimony were not initially included with the certified record, despite the statement from the Court of Common Pleas that the entire record was being transmitted and Counsel's duty to insure that all relevant documents have been provided for review. The lack of notes of testimony from a multi-day, multiple defendant murder trial should have been obvious upon review. This Court requested notes of testimony be located and transmitted for our review. Some notes were then received, but the most relevant days' notes, including the testimony of Gould and Sampson, were, once again, not provided. Upon second request by this Court, the notes were finally transmitted for our review. We are aware that the use of electronic records, such as provided instantly, may still be novel to counsel. However, it is still the responsibility of counsel to ensure this Court has been provided ALL the relevant documents needed for review. If an incomplete record is provided to this Court, thereby hindering our ability to conduct a meaningful review, we could find issues waived. However, this is a murder case and we are reluctant to find waiver. We ask the lower court and counsel to be mindful of our need of a complete record.

[7] Annette Gray, Jeffrey Gould, and Eleanore Sampson.

specifically, premeditation and deliberation. Ellison relied heavily, if not exclusively, on *Chambers v. McDaniel*, 549 F.3d 1191 (9th Cir. 2008) to support his claim. Initially, we note that a federal appellate decision from the Ninth Circuit, interpreting Nevada law, is not binding upon our Court. The *Chambers* decision does not extensively quote the charge given, but noted the likelihood of confusion in the definitions of premeditation, willfulness, and deliberate action. This was especially true given a lack of definition provided for lesser relevant charges of homicide. Ellison notes the 3rd Circuit recently cited *Chambers* with approval in *Unites States v. Jackson*, 862 F.3d 365, 411 n 45 (3rd Cir. 2017). *Jackson* simply cited *Chambers* for the standard proposition that a jury charge must contain all the essential elements of the crimes charged.

We have read the jury charge instantly at issue and agree with the PCRA court's finding that the charge provided sufficient definitions of all the elements for first-degree murder. *See* N.T. Trial, 7/13/2012 at 144-145. This charge virtually tracks the relevant language of the Pennsylvania Suggested Standard Jury Instruction (Criminal), § 15.2502A. The PCRA court also accurately found that this instruction has been affirmed by our court, in a similar challenge, in *Commonwealth v. Towles*, 106 A.3d 591 (Pa. Super. 2014).

Additionally, we note that, unlike *Chambers*, the trial court here gave a full charge on third-degree murder and then compared the two charges.

*See* N.T. Trial, 7/13/2102, 145-147. Accordingly, Ellison is not entitled to relief on this issue.

In light of the above, and the analysis provided by the Honorable Glenn B. Bronson in his June 21, 2017, Pa.R.A.P. 1925(a) opinion, Ellison is not entitled to relief. Accordingly, the February 10, 2017 order denying him relief pursuant to his PCRA petition is affirmed. The parties are directed to attach a copy of the June 21, 2017 opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/18

**FILED**

**JUN 2 1 2017**

Office of Judicial Records
Appeals/Post Trial

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF          :       CP-51-CR-0006872-2009
PENNSYLVANIA               :
                                :
v.                       :       CP-51-CR-0006872-2009 Comm. v. Ellison, Alonzo
                                :                     Opinion
ALONZO ELLISON           :

                                7964319431

OPINION

BRONSON, J.                                            June 21, 2017

## I. PROCEDURAL BACKGROUND

On July 16, 2012, following a jury trial before the Honorable Carolyn Engel Temin of this Court, defendant Alonzo Ellison was convicted of one count each of first degree murder (18 Pa.C.S. § 2502), possession a firearm without a license (18 Pa.C.S. § 6106), criminal conspiracy (18 Pa.C.S. § 903), and possessing an instrument of crime (18 Pa.C.S. § 907). On July 25, 2012, the Court imposed the mandatory sentence of life in prison for the murder charge (18 Pa.C.S. § 1102(a)(1)), and no further penalty on the remaining charges. Defendant filed a post-sentence motion, which the Court denied on August 6, 2012. Defendant was represented at trial, sentencing, and on appeal by Christopher Phillips, Esquire.

On September 23, 2014, the Superior Court affirmed defendant's judgment of sentence. On October 23, 2014, defendant filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was denied on April 29, 2015. Defendant then filed a *pro se* petition under the Post-Conviction Relief Act ("PCRA") on July 10, 2015. Teri B. Himebaugh, Esquire was privately retained to represent defendant on November 7, 2015. On May 9, 2016, with Judge Temin having retired, this case was reassigned to the undersigned judge. On August 13,

2016, defense counsel filed an Amended PCRA Petition ("Amended Petition"). On December 29, 2016, after reviewing defendant's Amended Petition and the Commonwealth's Motion to Dismiss, this Court ruled that the claims set forth in defendant's petition were without merit. That day, pursuant to Pa.R.Crim.P. 907, the Court issued notice of its intent to dismiss the petition without a hearing ("907 Notice"). On February 10, 2017, the Court entered an order dismissing defendant's petition. This appeal followed.

Defendant has now appealed the Court's dismissal of his PCRA petition, alleging that: 1) trial counsel was ineffective for intentionally and repeatedly misrepresenting to the jury the evidence concerning the scope of Commonwealth witness Jeffrey Gould's cooperation agreement; 2) appellate counsel was ineffective for failing to preserve and present a claim that the trial court violated defendant's due process rights by permitting the prosecution to cross examine and lead its own witness, Eleanore Sampson, with her prior inconsistent police statement without first determining that her recollection needed refreshing; 3) trial counsel was ineffective for failing to object when the trial court instructed the jury on first-degree murder with a charge that did not define the element of premeditation or deliberation with any degree of precision; 4) defendant's constitutional rights were violated when Detective Verrechio testified that a key Commonwealth witness, Antoinette Gray, was "terrified" and "scared" to be involved in this case; 5) trial counsel was ineffective for failing to request a *Kloiber* charge; 6) trial counsel was ineffective for failing to timely file a Rule 600 motion and motion to sever; 7) appellate counsel was ineffective for failing to argue that the trial court abused its discretion by permitting the jury to have the statements of witnesses Sampson and Gould sent back to the jury during deliberations; and 8) defendant's constitutional rights were violated by the trial court's imposition of a sentence of life without the possibility of parole when the crime was committed when defendant was 19 years old. Appellant's Concise Statement of Matters Complained of on

2

Appeal ("Statement of Errors") at claims I-VIII.[1]  For the reasons set forth below, defendant's

claims are without merit, and the PCRA Court's order dismissing his PCRA Petition should be

affirmed.

## II. FACTUAL BACKGROUND

The facts are set forth in Judge Temin's 1925(a) Opinion filed in defendant's direct

appeal as follows:

> On July 18, 2008, Barry Jacobs, Jr. ("Jacobs") was shot and killed on the 8700
> Block of Glenoch Place in Philadelphia, by the defendant, Ferock Smith
> ("Smith") and [Mikechel] Brooker ("Brooker") in an apparent dispute over drug
> territory after Antoniette Gray ("Gray") refused to purchase drugs from the
> defendant. When Gray shortly thereafter purchased drugs from Jacobs, the
> defendant, Smith, and Brooker shot Jacobs multiple times. At trial, Gray testified
> that she did not remember the shooting and her July 20, 2008 statement to police
> was admitted. In her statement, Gray identified the defendant, Smith, and Brooker
> as the three people who shot Jacobs. Gray also saw the defendant, Smith, and
> Brooker the next day and heard them laughing about shooting Jacob[s]. Another
> eyewitness, Jeffrey Gould ("Gould"), testified that he saw someone standing over
> Jacobs and shoot him in the head. Gould had identified that person as the
> defendant in a July 18, 2008 statement to police, which was introduced at trial.
>
> At trial, Eleanore Sampson ("Sampson") testified that she did not remember the
> events after the shooting and her July 19, 2008 statement to police was admitted.
> In her statement, Sampson stated that the defendant, Smith, and Brooker came to
> her apartment on the night of July 18, 2008. Sampson stated that she let the
> defendant, Smith, and Brooker use her apartment because they gave her drugs.
> The defendant, Smith and Brooker had a conversation in Sampson's apartment
> that night, during which she heard Smith say he shot Jacobs. Smith and Brooker
> had handguns with them which they placed in Sampson's apartment. Sampson
> asked the defendant to remove the guns from her apartment and the defendant
> took a 9 millimeter handgun from Smith. Brooker and Smith left Sampson's
> apartment shortly thereafter, at which time, the defendant gave the 9 millimeter
> handgun back to Smith. The defendant stayed and slept at Sampson's apartment
> and was arrested leaving from the rear of the apartment when the police were
> knocking at the front door. A .32 caliber handgun was found during a search of
> Sampson's apartment after the defendant's arrest....

Trial Court Opinion, filed 12/26/12, at pp. 2–3.

---

[1] There is no claim numbered V in defendant's Statement of Errors.  Rather, the numbering skips from from IV to
VI.

3

## III. DISCUSSION

An appellate court's review of a PCRA court's grant or denial of relief "is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error." *Commonwealth v. Yager*, 685 A.2d 1000, 1003 (Pa. Super. 1996) (citing *Commonwealth v. Legg*, 669 A.2d 389, 391 (Pa. Super. 1995)). The reviewing court "will not disturb findings that are supported by the record." *Id.*

Here, defendant's claims pertain to the alleged ineffective assistance of counsel. Under Pennsylvania law, counsel is presumed effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000), n.10 (citing *Commonwealth v. Copenhefer*, 719 A.2d 242, 250 (Pa. 1998)). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009); *Commonwealth v. Pierce*, 527 A.2d 973, 974-75 (Pa. 1987). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694). If the PCRA court determines that any one of the three prongs cannot be met, then the court need not hold an evidentiary hearing as such a hearing would serve no purpose. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008), *app. denied*, 956 A.2d 433 (Pa. 2008).

4

*A. Misrepresenting to the jury the evidence concerning the scope of Jeffrey Gould's cooperation agreement*

First, defendant claims trial counsel was ineffective for "intentionally and repeatedly misrepresent[ing] to the jury the evidence concerning the scope of Jeffrey Gould's cooperation agreement." *See* Statement of Errors at claim I. Gould was an important Commonwealth witness. Defendant contends that defense counsel, both in his opening statement, and during his cross-examination of Gould, falsely maintained that Gould had an agreement with the Commonwealth for assistance in his own criminal cases in exchange for his testimony against defendant. According to defendant, Gould's only agreement was with the federal Bureau of Alcohol, Tobacco and Firearms for assistance in exchange for Gould's testimony in unrelated drug cases. Memorandum of Law in Support of Petitioner's Motion for Post Conviction Relief ("Memorandum in Support of Petition") at pp. 14-16. Defendant argues that trial counsel's repeated misrepresentations about Gould's agreement were demonstrably false, and served to greatly bolster Gould's credibility with the jury. *Id.*

Defendant's claim is refuted by the record. It is true that trial counsel stated in his opening that Gould was promised help in exchange for testifying against defendant. It is also true that counsel cross-examined Gould about such promises. However, contrary to defendant's argument, the record shows that this strategy was supported by the evidence. Gould, in fact, did testify he received multiple benefits in exchange for his testimony. When asked on direct examination if there were any promises made to him by the Homicide Unit to provide a statement in this case, Gould responded "of course." N.T. 7/11/2012 at 174. Gould further testified that detectives told him he "wouldn't have to worry about [his] warrants," that he would be relocated, that he "wouldn't have to worry about nothing, things like that," and that "[he] was approached by a couple [of] detectives with a special deal...." *Id.* at 174-175.

5

Additionally, during cross-examination Gould testified that the homicide detectives told him that if he gave a statement then he would not have to worry about his open warrants for scofflaw and traffic violations. N.T. 7/11/2012 at 199. Gould further testified that he believed that his sentence in a shooting case was substantially reduced as a result of cooperating with the Philadelphia police. *Id.* at 202-203.

Accordingly, the record demonstrates that there is no factual basis for defendant's claim. Trial counsel did not misrepresent Gould's agreement to the detriment of defendant. To the contrary, counsel properly impeached Gould's testimony by showing that he received multiple benefits from the prosecution in exchange for his testimony.

> *B. Failure to preserve and present a claim that the Court erred in permitting the prosecution to cross-examine and to lead a Commonwealth witness with her prior inconsistent police statement without first determining that her recollection needed refreshing*

Next, defendant claims that appellate counsel was ineffective for "fail[ing] to preserve and present a claim that the trial court violated [defendant's] due process rights by permitting the prosecution to cross examine and lead its own witness, [Eleanore] Sampson, with her prior inconsistent police statement without first determining that her recollection needed refreshing." Statement of Errors at claim II. This claim is without merit.

The Rules of Evidence provide that "[a] witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility." Pa.R.E. 613(a). There is no prohibition to impeaching one's own witness, since the Rules provide that "[a]ny party, including the party that called the witness, may attack the witness's credibility." Pa.R.E. 607. If the prior inconsistent statement was contained in a writing that was signed and adopted by the declarant, it is admissible not only for impeachment, but also as substantive evidence under a hearsay exception set forth in the Rules. Pa.R.E. 803.1(1)(B) (providing an exception to the hearsay rule for a prior

6

inconsistent statement that "is a writing signed and adopted by the declarant" when the declarant testifies in court).

Here, the statement of Sampson at issue was clearly inconsistent with her testimony in court. In the statement, Sampson told detectives that defendant, Smith, and Brooker came into her apartment after the shooting and talked about killing the victim. N.T. 7/11/12 at 229-230. At trial, Sampson said that defendant and his cohorts came to her apartment before the shooting. N.T. 7/11/12 at 255-256. Under the Rules of Evidence cited above, it was entirely proper for the prosecutor to present Sampson with the prior inconsistent statement and to examine her about its contents. While it is true that a writing, or anything else for that matter, may not be used to refresh a witness's recollection unless that witness professes to a lack of memory, there is no such requirement for introducing a writing as a prior inconsistent statement.

As for the use of leading questions, the Court has wide discretion to reasonably control the mode and order of examining witness and the presentation of evidence, including the use of leading questions on direct examination. *See* Pa.R.E. 611(a); *Commonwealth v. Lambert*, 765 A.2d 306, 360 (Pa. Super. 2000). Here, defendant fails to identify any specific leading questions as to which the Court overruled an objection by trial counsel. In fact, defendant cites the Court in his Statement of Errors to numerous objections made by counsel to leading questions that were sustained by the Court. Of course, appellate counsel cannot be faulted for not premising Court error on rulings that were made in favor of defendant.

Accordingly, there were no meritorious issues for appellate counsel to raise regarding the questioning of Sampson with her prior inconsistent statement. No relief is due.

C. *Failing to object to the trial court's jury instruction pertaining to first-degree murder*

Next, defendant avers that counsel was ineffective for failing "to object when the trial court instructed the jury on first-degree murder with a charge which did not define the element of premeditation or deliberation with any degree of precision thereby making the jury verdict unreliable." Statement of Errors at claim III. This claim is without merit.

Here, the Court gave, nearly verbatim, the Pennsylvania Suggested Standard Jury Instructions on first degree murder. *See* Pa. SSJI (Crim), §15.2502A; N.T. 7/13/2012 at 144-145. Our Superior Court has recently held that this precise instruction properly sets forth all of the elements of first degree murder. *Commonwealth v. Towles*, 106 A.3d 591, 607 (Pa. 2014) (jury charge substantially identical to the Pennsylvania Suggested Standard Jury Instructions "thoroughly and accurately represented the law on first degree murder"). Moreover, the Superior Court specifically rejected the claim, made now by defendant, that the Standard Instructions failed to adequately define the element of premeditation or deliberation. *Id.* Accordingly, defendant's claim is refuted by established law.

Defendant also contends that it was error to send out with the jury in writing the portion of the jury charge that set forth the elements of first and third degree murder. Statement of Errors at claim III(E). However, sending out the elements of the offenses with the jury is explicitly authorized by the Rules of Criminal Procedure. Pa.R.Crim.P. 646(B).

Since the instruction given to the jury was proper, and since the Rules authorized the Court to send out to the jury the elements of the offenses, trial counsel could not have been ineffective for failing to raise these issues in the trial court. No relief is due.

8

D. *Detective Verrechio's testimony that a witness was scared to be involved in this case*

Defendant also claims that trial counsel was ineffective for not to renewing his objection, moving to strike, and requesting a curative instruction after Detective John Verrecchio testified that witness Antoniette Gray was terrified and scared to be involved in this case. Defendant also claims that appellate counsel was ineffective for failing to raise this claim on appeal. Statement of Errors at claim III; Amended Petition at p. 9. This claim is without merit.

Under Rule 701 of the Pennsylvania Rules of Evidence, a lay witness may testify to opinions or inferences "which are rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue...." Pa.R.E. 701. The lay opinion may not be based on scientific or other specialized knowledge that would require testimony by an expert. *Cominsky v. Donovan*, 846 A.2d 1256, 1259 (Pa. Super. 2004). An opinion is "rationally based" on the witness's perception where the witness's prior experience and personal observations sufficiently support the proffered opinion. *See Commonwealth v. Bowser*, 624 A.2d 125, 133 (1993). The determination of whether an opinion is "helpful" is left to the discretion of the trial judge, and can only be reversed in the case of an abuse of discretion. *See Commonwealth v. Yedinak*, 676 A.2d. 1217, 1221 (Pa. Super. 1996); *see also Lewis v. Mellor*, 393 A.2d 941 (Pa. Super. 1978) (*en banc*). A witness's opinion about the demeanor of another person may be an admissible lay opinion under the Rule. *See Commonwealth v. Boczkowski*, 846 A.2d 75, 97 (Pa. 2004) (holding that it was not an error to permit a witness to testify that a witness appeared "serious" when he admitted to killing his victims).

9

Here, Detective Verrecchio testified that witness Antoinette Gray appeared to be "terrified" and "afraid" when he interviewed her. N.T. 7/11/2012 at 89. Because his opinion that she appeared fearful was based on his personal observations during that interview, the testimony was a proper lay opinion. *See Boczkowski*, 846 A.2d at 46, 97. Moreover, because Gray recanted her statement at trial, Detective Verecchio's observations were highly probative to explain Gray's differing versions of the facts. Accordingly, Detective Verecchio's testimony regarding the Gray's demeanor was properly admitted.

Trial counsel did object to the challenged testimony of Detective Verrecchio, and his objection was overruled. N.T. 7/11/2012 at 46. Since the testimony was properly admitted, counsel could not have be ineffective for failing to renew his objection to the testimony or raising the issue on appeal. No relief is due.

### E. Failure to Request a *Kloiber* Charge

Defendant claims that his trial counsel was ineffective for not requesting that the trial court provide a *Kloiber* charge to the jury in relation to Gray's testimony. Defendant argues that he was entitled to a *Kloiber* charge because Gray had identified defendant to the police as one of the shooters prior to trial, but failed to identify the defendant at trial. Statement of Errors at claim IV. This claim is without merit.

A *Kloiber* charge instructs the jury to receive a witness's identification of a perpetrator with caution where the eyewitness: (1) did not have an opportunity to clearly view the perpetrator; (2) equivocated on the identification of the perpetrator; or (3) had a problem making an identification in the past. *Commonwealth v. Kloiber*, 106 A.2d 820, 826-27 (Pa. 1954), *cert. denied*, 348 U.S. 875 (1954); *see Commonwealth v. Rios*, 920 A.2d 790, 804 (Pa. 2007). A *Kloiber* charge is not appropriate where an eyewitness's

10

identification of the defendant was always positive and the opportunity for the witness to observe the defendant was good. *Kloiber*, 106 A.2d at 826; *Commonwealth v. Upshur*, 764 A.2d 69, 77 (Pa. Super. 2000).

Here, none of the factors that would warrant a *Kloiber* charge were present. The witness, Antoinette Gray, told police that defendant attempted to sell her drugs on the night of the homicide. N.T. 7/10/2012 at 122-123. Additionally, Gray told police that she was standing "a couple of feet away" from defendant when defendant shot the victim. N.T. 7/10/2012 at 122. Accordingly, Gray had an excellent view of defendant. Moreover, Gray told police that she had known defendant for at least six or seven years at the time of the murder and that she saw defendant every day around the time that the victim was killed. N.T. 7/10/2012 at 129. Finally, Gray positively identified defendant to detectives shortly after the victim was killed. N.T. 7/11/2012 at 271, 273-276.

Defendant argues that, notwithstanding the absence of the usual factors requiring a *Kloiber* charge, defendant was entitled to the charge because Gray failed to identify him at trial. However, "[u]nlike the typical *Kloiber* situation, where there is a damaging in-court identification of the accused the same type of concerns are not present where a witness declines to identify the defendant in court." *Commonwealth v. Sanders,* 42 A.3d 325, 335 (Pa. Super. 2012), *app. denied,* 78 A.3d 1091 (Pa. 2013). Accordingly, where, as here, a fearful witness recants a previous identification, a *Kloiber* instruction need not be given so long as the court gives the jury the standard jury instruction on eye-witness identification. *Sanders,* 42 A.3d at 332-335.

Accordingly, there was no basis for trial counsel to request a *Kloiber* instruction regarding Gray's identification of the defendant. Counsel's failure to do so, therefore, could not have deprived defendant of effective assistance of counsel.

11

*F. Failure to file a timely Rule 600 motion and motion to sever*

Defendant next claims: "The PCRA Court erred when it found that counsel was not constitutionally ineffective under the Sixth Amendment for failing to timely file a Rule 600 motion and Motion to Sever." Statement of Errors at 6. This claim is without merit.

Pennsylvania Rule of Criminal Procedure 600 authorizes charges to be dismissed if the defendant is not brought to trial within 365 days of when the complaint is filed, after deducting all excludable time and excusable delay. Pa.R.Crim.P. 600; *see Commonwealth v. Murray*, 879 A.2d 309, 314 (Pa. Super. 2005). Excludable time and excusable delay are defined as follows:

> "Excludable time" is defined in *Rule 600(C)* [and includes, in pertinent part, any] period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. 'Excusable delay' is not expressly defined in *Rule 600*, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Commonwealth v. Hyland*, 875 A.2d 1175, 1190 (Pa. Super. 2005), *appeal denied*, 890 A.2d 1057 (Pa. 2005) (quoting *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*), *appeal denied*, 875 A.2d 1073 (Pa. 2005)).

Here, the extensive delays in bringing defendant to trial were not caused by defendant, but rather by applications for continuances by his codefendants. Defendant appears to acknowledge that Rule 600 would not have been violated so long as those continuances were properly deducted as excusable time. He contends, however, that the continuances were not excusable, and that in any event, trial counsel should have timely moved to sever the defendant's case from the codefendants so that he could have proceeded to trial at an earlier date. While trial counsel did file a Rule 600 motion shortly before the trial, defendant argues that he should have filed such a motion along with a motion for severance much sooner.

12

Defendant's arguments are refuted by established law. Continuances sought by co-defendants constitute excusable delay provided the Commonwealth has been duly diligent and where the circumstances resulting in the continuances were beyond the Commonwealth's control. *Commonwealth v. Jackson*, 765 A.2d 389, 393-394 (Pa. Super. 2000). Moreover, the Commonwealth's due diligence obligation does not require that it agree to sever a codefendant to prevent a potential Rule 600 violation. As our Superior Court has stated:

> [T]he Commonwealth is not required to sever a defendant's case from a co-defendant's when faced with a possible Rule 600 violation. *Commonwealth v. Jackson*, 765 A.2d 389, 395 (Pa. Super. 2000). This holding is in accordance with the historical posture of the Rule, which recognizes that a prophylactic application is not in the interest of justice and also that the Rule must take into account society's interest in the effective administration of justice.

*Commonwealth v. Kearse*, 890 A.2d 388, 394-395 (Pa. Super. 2005), *app. denied*, 906 A.2d 1196 (Pa. 2006). Defendant does not aver any manner in which the Commonwealth was not duly diligent apart from it not agreeing to a severance, and does not allege any grounds for severance apart from the potential Rule 600 violation. Accordingly, there would have been no valid bases for trial counsel to have moved for severance or for dismissal under Rule 600 at any time prior to the trial. Because counsel cannot be ineffective for failing to raise a meritless claim, no relief is due.

### G. *Failing to raise a claim that the trial court erred when it permitted witness statements to be read back and provided to the jury during deliberations*

Defendant next asserts that counsel was ineffective for failing to assert on appeal that the trial court erred: 1) "by permitting the jury to have the Sampson and Gould statements read back to/provided to them during deliberation in contravention of the Trial Court's own prior ruling;" and 2) by not reaffirming its prior instruction that the jury was

13

not to give any greater weight to the provided statements than to in-court testimony. Statement of Errors at claim VII. This claim is without merit.

The Rules of Criminal Procedure provide that, "[u]pon retiring, the jury may take with it such exhibits as the trial judge deems proper except [that]…[d]uring deliberations, the jury shall not be permitted to have: (1) a transcript of any trial testimony; (2) a copy of any written or otherwise recorded confession by the defendant; (3) a copy of the information or indictment; and (4) [except for elements of the offenses or defenses], written jury instructions." Pa.R.Crim.P. 646. In general, a jury should be permitted to review materials during deliberations where those materials inform the jury and aid it in the determination of the facts. *Commonwealth v. Lilliock*, 740 A.2d 237, 243 (Pa. Super. 1999), *appeal denied*, 795 A.2d 972 (Pa. 2000). However, a Court should not allow the jury to possess an exhibit if it is likely that the jury would skew its importance or give it undue emphasis. *Commonwealth v. Dupre*, 866 A.2d 1089, 1102 (Pa. Super. 2005), *appeal denied*, 879 A.2d 781 (Pa. 2005); *Commonwealth v. Strong*, 836 A.2d 884, 888 (Pa. 2003); *Commonwealth v. Riggins*, 386 A.2d 520, 525 (Pa. 1978). So long as an exhibit is not specifically prohibited by the rule from being submitted to the jury, a trial court's decision to grant or deny jury access to such an exhibit will not be reversed absent an abuse of discretion. *See, e.g., Commonwealth v. Bango*, 742 A.2d 1070, 1072 (Pa. 1999); *Riggins*, 386 A.2d at 525.

Here, the jury requested to see the written statements of Jeffrey Gould and Eleanore Sampson, specifically requesting the paragraphs regarding the events of the shooting. N.T. 7/13/12 at 165. The trial court was not prohibited by the rules from sending out these documents, which were clearly central to the issues that the jury needed to resolve. Accordingly, the trial court did not abuse its discretion in providing the statements to the jury. Moreover, there is no authority for defendant's contention that the court was required to repeat a prior admonition to the jury that an out-of-court statement should not receive greater weight than in-

14

court testimony. Since defendant's claims are meritless, appellate counsel could not have been ineffective for failing to raise them on appeal.

### H. *Imposition of a sentence of life without the possibility of parole when defendant was 19 years old at the time the crime was committed*

Finally, defendant avers that "The PCRA Court erred when it found that [defendant's] Sixth, Eight and Fourteenth Amendments were not violated by the imposition of a sentence of life without the possibility of parole when the crime was committed when [defendant] was only 19 years old." Statement of Errors at claim VIII. Defendant bases this claim on the decision of the Supreme Court of the United States in *Miller v. Alabama*, 132 S.Ct. 2455 (2012), which held that a mandatory life sentence for a defendant under the age of 18 at the time of the offense is unconstitutional. This claim is frivolous.

Under *Miller*, mandatory life imprisonment without parole is unconstitutional for defendants under the age of 18 at the time of the offense. *Miller*, 132 S.Ct. at 2460. In *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), the Supreme Court held that *Miller* applies retroactively to cases on state collateral review. *Montgomery*, 136 S.Ct. at 732. However, "[t]he *Miller* decision applies to only those defendants who were 'under the age of 18 at the time of their crimes.'" *Commonwealth v. Furgess*, 149 A.3d 90, 94 (Pa. Super. 2016) (quoting *Miller*, 132 S. Ct. at 2460). As a result, offenders 18 years of age or older at the time of their offense do not fall "within the ambit of the Supreme Court's decision in *Miller*...." *Furgess*, 149 A.3d at 94 (holding that *Miller* does not apply to a 19 year-old offender). Since the defendant was admittedly 19 at the time of the offense at issue, *Miller* is inapplicable. *Id.*

## IV. CONCLUSION

For the foregoing reasons, the Court's order dismissing defendant's PCRA Petition should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

Commonwealth v. Alonzo Ellison                    CP-51-CR-0006872-2009
Type of Order: 1925(a) Opinion

### PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:

**Defense Counsel/Party:**

Teri B. Himebaugh, Esquire
2201 Pennsylvania Ave. #513
Philadelphia, PA 19130

Type of Service:       ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**District Attorney(s):**

Hugh J. Burns, Jr., Esquire
Chief, Appeals Unit
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA  19107

Type of Service       () Personal (**X**) First Class Mail ( ) Other, please specify:

**Additional Counsel/Party:**

Joseph D. Seletyn, Esquire
Prothonotary
Office of the Prothonotary – Superior Court
530 Walnut Street, Suite 315
Philadelphia, PA 19106

Type of Service:       ( ) Personal  (**X**) First Class Mail  ( ) Other, please specify:

**Dated:  June 21, 2017**

Aaron B Wicker
Law Clerk to Hon. Glenn B. Bronson